172137, Joseph S. Hadjusak, versus the United States. Thanks. Mr. David, good morning. Good morning, Your Honor. Your Honor, unless otherwise instructed, I'm going to assume, given the short time period I have, this Court's familiarity with the facts and the arguments in the briefs. Joseph Hadjusak, had he been in the military, right now would be receiving medical benefits and D.A. benefits to which he would deserve for the permanent and serious injury he suffered. He was not in the military. Despite the government's representation that this is a military operation, it is not, and it was not. Very clearly, the military themselves and the operators of the delayed entry program understand that liability accrues through the F.T.C.A. in this civilian manner. Had he been injured in such a way, he could not serve, but he would have benefits. Had Joseph been injured in this manner as a matter of the regular and ordinary course of his training, this argument that I have before the Court would be very difficult. I would be asking the Court to change some of its language that has been used. But that is not the case that we have here. Joseph Hadjusak was not, no matter how the government tries to twist it to say that it was, he was not injured in the ordinary course of a discretionary plan that in fact the District Court erred in finding was uniquely designed for this civilian trainee. Who was he training at the time he was injured? I'm sorry? Physically, what was he training at the time he was injured? He was at the gym of the facility, the delayed entry program facility. So he was conducting an activity in that facility related to the program? It depends on, well, that is not how we would define it, Your Honor. As a matter of fact, tell me. He had permission to go home. He had passed his test, except for one. And that very day that we're talking about, he had passed the final part of his test. Everything that happened that we complain of, that is properly before this Court happened, after he had completed his training. He had permission to go home, and another drill sergeant didn't think that that was appropriate. He called him back from his weekend where he was just saying goodbye to the family and he was going to be mustered into the boot camp program now, to the Marines. He called him back to punish him, specifically stated that he was disciplining him. And now, whether we prove that or not, that is the facts that are before the Court. And there is no provision, no discretion of any of these trainers to punish or to discipline an individual in this manner. Is that allegation of punishment contained in your complaint? Yes, Your Honor, I believe it is. I don't think the word punishment is used. No, it isn't used. I'm just curious as to the extent to which there is any congruence between the theory you're now advocating and the theory that was adumbrated in your complaint. With apology, I don't have the exact wording of the complaint in front of me. I think the only time the word punishment or anything like it was used was there was kind of an offhand reference to it in an affidavit that was submitted in the District Court. I wouldn't call offhand, Your Honor. There was an affidavit to that effect. There is a description of that, but what the complaint does… There's one sentence in an affidavit. That's what I meant by offhand. Okay. What's the point of the affidavit? The underlying facts laid out in sequence in the complaint set out that this was not part of the program. It was indicated that he was called back for a brand new sergeant who almost worked him to death and did work him to permanent injury for the sole purpose of instructing him that he was not to leave the program, not to miss events in the program. And, Your Honor, this is not an individually designed program. Nothing like this was done to anybody else and nothing like this has been done in his program before. He had passed his test in the early stages of this entire event. Harvey, you're confusing me a little there. On the one hand, you seem to be saying that this was outside the scope of the event or the activity altogether. On the other hand, you seem to be talking about the person's purpose in driving him as hard as he did. Those are different arguments, and one of them seems to run a little headlong into our case law, saying that we look at whether something is susceptible to a policy analysis, not whether the policy analysis was undertaken or even the motivation for the purpose. So I don't know if your arguments are joined or stand independently. The arguments actually stand independently and are joined, but they do stand independently, and I thank you for bringing us to that point. Your Honor, in this very court, in Shansky v. the U.S., noted very specifically that the language that you just mentioned, the very, I would call it unfortunate, phrasing of anything susceptible of policy analysis, has led us to the point where if you look through the decisions, they're almost wholly irreconcilable. As the Shansky court noted, warning of hidden alligators is not within the exception. Warning of dangerous moose is, and we're not getting into the long list of contradictory decisions out there. The phrase, and this is, I believe, essential, the phrase susceptible of policy analysis has been freed from its contextual context, which is clearly set out in Berkowitz and in Galbraith. Before you go further, paragraph 12 of the complaint reads as follows. During the training session on March 1, Staff Sergeant McHale excessively exercised your client under dangerous conditions with high intensity, long periods of time without breaks for adequate hydration. Is that the same as what you're saying, that it was after he was released? Well, he's not released, Your Honor. He has an obligation to stay, when he's staying within the program, if he's going to get into the Marines. Wait a minute. According to this, it was during the training session that he was injured. I think it makes a big difference. Particularly if it was not during the training session, we would have jurisdiction to hear this case. I understand. And here's the context, Your Honor. He's required to obey the commands of the trainers. He was out, he was called in for this special training session by the trainers. So he's attending, he's obeying the commands of his trainers. So when he attends the training session, it turns out not to be a training session. It turns out to be punishment. But the complaint doesn't say that. The complaint says what Judge Torrey just read, that he was excessively exercised during the training session. That's what the complaint says. That's what the suit was about. It seems to me that it's being reinvented on the fly. I don't believe so, Your Honor. But the status of the intent of the sergeant who is conducting this is really not part of the entire complaint. We are not alleging an intentional tort. Which, whether or not that would fall within the FTCA is a completely different matter. We are alleging the negligence in punishing him by excessively... And the word excessively, and the fact that it was clearly dangerous and in excess of anything he had done before, is not part of the entire purpose here. But if the negligence is in punishing him, rather than in excessively exercising, the imposition of punishment under the applicable guidelines has a large element of discretion. No, Your Honor. You may not think it was wisely applied in this case, or even thought of. No, Your Honor. There's actually no discretion. They're not allowed to punish. There's absolutely no... The government's position here is that there's no regulation on these people whatsoever. That is their affidavit. That is their position. Therefore, they believe that anything that a trainer does, anything that a trainer does, is discretionary. We'll ask the government's attorney about that, but I don't think that's a fair characterization of their position. If the government concedes in its brief that there are certain types, for example, of excessively high-risk activities that are flatly prohibited, then if they just say this isn't one of them, this is pull-ups and push-ups and other proper components of an exercise regime, which you allege, perhaps correctly, were excessively employed in this case... Your Honor, he was not in the training program at the time. He had passed his test. But you still allege that it was during a training session. During a training session, which he was required to attend. Anything could have happened then. He could have been beaten with a club, whipped, kicked, or thrown out. That was where he was at the time. Your Honor, would you agree that if he was in the training session, the Federal Tort Claims Act would apply? Well, I don't know how this could happen outside. I mean, if he came to his home on his own, it would be ultra-virus and maybe not even a government activity. I actually don't know that I can do that. I can say that. That wasn't my question, however. I think you're confusing at least me some, because you started out for the first five minutes painting a picture of saying he had passed everything except the pull-ups he'd been commissioned to be done, and so he was all done with this program, and then this thing happened. But your complaint, and even the affidavit, the affidavit says he had to go back to finish his pulley training. He then reported, during the exercise session, the following occurred. That doesn't sound like what you started telling us about. It sounds like what happened is he had to go back for training. He had the training. There's a session. And then there was this excessive exercise administered to him for an unreasonable period of time that caused an injury. Yes, after he had passed in the early part of that session. And remember, he has to attend. He's required to listen to the orders of the trainers. So he attends the session. He had already been ready and passed. And then the first thing he did is pass the pull-up test. At that point, he's qualified to enter into the Marine Corps. Is there anything, I can't find anything in the affidavit that says, where's the evidence that once, if he showed up that day, did the pull-ups, he could leave no matter what the... No, Your Honor, he's required to listen to the commands of his trainers. Well, then it's still part of the training program. Well, if he'd beaten with a club, Your Honor, it would be still part of the training program. But I would be loath to find that this panel would find that acceptable within the discretionary bounds. But that's a different issue. I don't believe it actually is. In all the accusations in this case, these are not the facts we've brought. He was not being beaten with a bat, baton. He was asked to do more exercise. He was ordered to do excessive exercise that caused the complete death of his kidneys. Right. And there was no purpose at that point. He had passed his exam. The purpose was strictly disciplinary, which he's not allowed to do. There is nothing in the authority. And in fact, to the extent there is authority here or guidelines for the trainers, it is very specifically that you cannot do that without... Are you telling me that in a military situation, supervisors are not allowed to impose discipline? Most certainly, within a military situation, such things are subject to court-martial. And those regulations are clear. This is absolutely, despite the government's position, not a military situation. Clearly, they are trained civilians and they know that they are not subject. In fact, their own commander has ordered that they are not to establish a drill instructor, trainee, boot camp member relationship. Not to do that. That they are not to be punished. That they are not to be anything that is going to risk their safety whatsoever without approval from the commander. No approval was done. Whatever other discretion they had, this sergeant needed, these sergeants needed approval to do what they did and they didn't get it. That's assuming that it wasn't punishment, assuming it would be part of a training program. He was called in individually for a disciplinary matter that was not permissible. Your Honor... Your time is up. Sorry. Ms. Dixon? May it please the court, Courtney Dixon on behalf of the United States. Your Honor, as the court has been discussing today, paragraphs 11 through 14 of the complaint allege the relevant conduct and it's the plaintiff was injured in a physical training exercise at a recruit station as part of the late entry program. The Marine Corps guidelines vest Marine Corps recruiters with broad discretion to design unique exercise programs that are tailored to the needs of each individual police. Suppose one of his fellows showed up, he passed, he did his pull-ups, he'd done everything, but the sergeant decided he didn't like him. So he said, your next training step is to jump off this 20-foot cliff onto the pavement below. Your Honor, I think that would be a different analysis on your step one. Wouldn't there be liability in that situation? Your Honor, I think under step one of the discretionary function exception framework, when we're looking at specific mandatory prohibitions, there might be different prohibitions on making a recruit jump off a cliff, for example, but assuming that there is no specific mandatory prohibitions, as there are not in this case, it's presumed at step two that it's policy-based. What about there's the commanding general's policy letter that we have in the file here that says any activity that presents the real possibility of serious injury to police or prospective applicants should not be undertaken. So it seems to me there's a mandate from the general that prohibits this fellow from having them participate in any activity that has a real possibility of serious injury. So if he had him jump off the cliff to 20 feet below the pavement, I would think that would not be a discretionary decision. Your Honor, I think that statement that you just read is a broad aspirational statement similar to other kinds of statements that this court has stated is not sufficiently specific to create a mandatory prohibition. So if this sergeant had him jump off the 20-foot cliff and the general called him in, the sergeant would have just said to the general that was kind of a broad aspirational, I didn't take it as a policy. Is that what you're saying? Your Honor, if there is no specific mandatory policy governing precisely how a government actor is supposed to undertake the given conduct, then it's presumed at step two of the discretionary function analysis that it's policy-based. So I think I hear you saying if he had him jump off the 20-foot cliff, there'd still be immunity here. Your Honor, the goals of the delayed entry program are to make sure that Marines are mentally and physically prepared for Marine Corps duty, a goal of reducing attrition, a goal of making sure that they're committed to the Marine Corps. If there are no mandatory prohibitions guiding the conduct, it's presumed at step two that they're susceptible to policy analysis. The Marine Corps guidelines set forth the 12-step policies. What about a plane without a parachute? It's an extreme example, but I'm interested in the answer. Is your client's position that that's a discretionary decision, and so there'd be immunity? Your Honor, parachuting is specifically prohibited in the Marine Corps guidelines, and the language used to specifically prohibit parachuting distinguishes that activity from the type of physical activity at issue here, in which case not only are there no guidelines on how many exercises should be performed at what frequency at what duration, but in fact the guidelines set forth extremely broad parameters that Marine Corps recruiters are to take into account when designing and tailoring unique exercise programs. There is a guideline that says you should avoid any activity that presents a real possibility of serious injury. Your Honor, this is a physical training program for Marine Corps recruits. If that's to be taken literally, then almost any type of physical activity presents the real possibility of serious injury. But you've seen counsel not to even be willing to concede that at the margins, conduct can be so extreme that it will forfeit protection under the discretionary function exception, even though it's perfectly obvious that it's incompatible with the broad aspirational goal. For example, the jumping off the cliff. I certainly didn't mean to indicate that any kind of extreme example would not fall into that. There are some things that, in Shansky, where the broad aspirational goal was safety, we said, well, it's susceptible to policy judgment whether you need a railing in a particular circumstance. But if Shansky, instead of a railing, was a decision by the proprietor of the trading store, to turn a hungry lion loose in the aisles, the fact that safety was a broad aspirational goal wouldn't have protected the government from liability, you would think. No, Your Honor, and I certainly didn't mean my response to indicate that we're saying that anything outside the bounds would fall within the scope of the discretionary function exception. So now that we've got some agreement on principle, and let's talk about its application to this case, wouldn't there potentially be a factual issue here as to how far beyond the scope, the intensity of this exercise, with the guys literally collapsing over two hours, only given two 20-second breaks over a two-hour period of time. Might that start to get something like a fact finder could say, that's going well beyond the exercise for police and sounds more like jumping off the cliff to punish someone. Your Honor, I think that, again, paragraphs 11 through 14 of the complaint set forth the conduct here. Plaintiff was doing a two-hour exercise. He normally went to the recruit station three times a week and did an hour and a half exercise. He was doing running, jumping, lunges, the type of activities that are not only, there's no specific guidelines about how long these exercises should last, but those types of physical activities are in fact encouraged throughout the Marine Corps guidelines. They encourage competitions for best run and most pull-ups. So I don't think that his conduct in this case is getting anywhere near the line that Your Honors have recognized and I recognize as well. There are obviously lines about when this would be so extreme that it's not susceptible to policy analysis or outside those bounds, but that's simply not the case here. Can you clarify something for me? Absolutely. Your opponent says that there's no authority to discipline. I disagree, Your Honor. Is there a regulation that covers it? Not that I'm familiar with and certainly not anything that plaintiffs have identified to this court. And I will say that, although plaintiff has made much of the fact that he allegedly passed his pull-up test, again, the goals of the Delayed Entry Program are larger than simply passing the required fitness standards to enter into recruit training. It's to reduce attrition in the recruit training itself, to make sure that they're prepared in a larger sense, both physically and mentally, to enter recruit training and Marine Corps duty and to instill a sense of commitment, dedication and motivation to the Marine Corps. So even if plaintiff showed up and passed his pull-up test, it's nonetheless susceptible to policy analysis that there are larger goals of the Delayed Entry Program at play that could be weighed in making a judgment about how to specifically exercise plaintiff. And again, plaintiff is not identified and we're not aware of any specific mandatory prohibition setting forth how long these exercises should last, for what duration, for what frequency or even what exercises should be performed. Something seems odd here. Here we have a fellow who shows up because he wants to serve his country in the military. He then drives himself so hard and tries so hard at the behest of a commanding officer that he injures himself. And the Marine Corps' response is, as I understand it, is tough luck. We're not going to do anything. Even though the Marine Corps' own internal documents say be careful, we could be liable if we do stuff like this. You know, the only question before this court is whether a plaintiff can sue the United States in a negligence action and the Federal Tort Claims Act and the Discretionary Function Exception answers that no. All of these laws have an incentive to ensure that Marine Corps recruits are not injured and they can take their own actions to make sure that that's the case. In fact, again, it's a goal of the delayed entry program to reduce attrition and have recruits enter the Marines motivated, committed, and physically prepared to do it. So while his injuries are regrettable, the Federal Tort Claims Act answers very clearly that the Discretionary Function Exception applies and that the Marine Corps or the government is asking for carte blanche. As I've stated, there obviously are extreme examples that do not fall from the Discretionary Function Exception. There's obviously an incentive for the Marine Corps to not have this behavior happen. But in the context of this case, the allegations in the complaint and the Marine Corps guidelines that are in the record, it's clear that Sergeant Michelou had broad discretion to choose an exercise program that meets the delayed entry program and plaintiff's own unique needs to enter the Marine Corps. For that reason, the District Court was precisely correct that the decisions in this case would be exactly the type of decisions to which the Discretionary Function Exception was intended to apply.  we ask that the District Court be affirmed. Thank you.